J. Bryan Quesenberry
2750 SW Coast Ave.
Lincoln City, OR 97367
801-473-9951
jbq.esq@gmail.com
*Plaintiff/Relator*

Case: 1:23-cv-03531 JURY DEMAND
Assigned To : Boasberg, James E.
Assign. Date : 11/20/2023
Description: Pro Se Gen. Civ. (F-DECK)

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel.<br>J. BRYAN QUESENBERRY,<br><br>      Plaintiff/Relator,<br>vs.<br><br>WASHINGTON CONVENTION AND<br>SPORTS AUTHORITY a/k/a EVENTS DC,<br><br>      Defendant. | **COMPLAINT FOR VIOLATION OF<br>FEDERAL FALSE CLAIMS ACT**<br><br>**(Filed in camera and under seal)**<br>**(DO NOT PLACE ON PACER)**<br><br>JURY TRIAL DEMANDED<br><br>Civil Action No. _____ |

Plaintiff-Relator J. Bryan Quesenberry, a licensed attorney acting *pro se* on behalf of the United States of America (the **"Government"** or the **"Federal Government"**) and against Defendant, alleges, based upon personal knowledge, relevant documents, information, and belief, as follows.

## INTRODUCTION

1.      This is an action to recover damages and civil penalties on behalf of the United States of America arising from false and/or fraudulent records, statements, and claims made and caused to be made by Defendant and/or its agents and employees, in violation of the federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.* (**"FCA"**).

2.      This action seeks to recover more approximately $5 million wrongfully loaned to Defendant through the Federal Government's Payroll Protection Program (**"PPP"**). The PPP provided a pathway to borrowers to receive forgiveness of these loans.

3. Defendant is a government-owned and controlled entity, as detailed below.

4. As such, Defendant was not entitled to PPP funds. *See*, 13 CFR 120.110(j) ("government-owned entities" are ineligible to receive SBA loans).

5. Rather, as a government-owned and government-controlled entity, Defendant was eligible for Covid relief funds through programs other than the PPP, including, for example, the American Rescue Plan Act and the State and Local Fiscal Recovery Funds program.

6. Nevertheless, Defendant represented in its PPP application that it was eligible for a PPP loan.

7. Because Defendant obtained (and was forgiven) approximately $5 million in PPP funds, despite being ineligible, other eligible small businesses were denied the opportunity to borrow and use that PPP money.

## HISTORY OF THE FALSE CLAIMS ACT

8. Pursuant to the PPP, the Federal Government spent hundreds of billions of dollars in stimulus funding, as well as other federal funding, to support and aid small businesses through the coronavirus pandemic.

9. The FCA was enacted during the Civil War, and was substantially amended in 1986, and again in 2009 and 2010. Congress amended the FCA in 1986 to enhance the Federal Government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the FCA, which Congress characterized as a primary tool for combating government fraud, was in need of modernization. The amendments create incentives for individuals to come forward with information about fraud against the Federal Government without fear of reprisals or inaction, and enable the use of private legal resources to prosecute fraud claims on the Federal Government's behalf.

10. The FCA prohibits, *inter alia*: (1) knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval; and (2) knowingly making or using, or causing to be made or used, a false or fraudulent record or statement material to a false or fraudulent claim. 31 U.S.C. §§ 3729(a)(1)(A), (B). Anyone who violates the FCA is liable for a civil penalty for each such claim, **plus three times the amount of the damages** sustained by the Government. 31 U.S.C. § 3729(a)(1)(A) (as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 [28 U.S.C. § 2461 note; Public Law 104-410]).

11. In 2009, Congress amended the FCA to clarify that a "claim" includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest…" 31 U.S.C. § 3729(b)(2).

12. The FCA allows any person having information about an FCA violation to bring an action for himself and the Federal Government, and to share in any recovery. The FCA requires that the complaint be filed under seal for a minimum of 60 days (without service on Defendant during that time) to allow the Federal Government time to conduct its own investigation and to determine whether to join the suit.

13. Based on the foregoing laws, *qui tam* Plaintiff/Relator seeks through this action to recover all available damages, civil penalties, and other relief for the violations alleged herein in every jurisdiction to which Defendant's misconduct has extended.

## PARTIES

14.  Plaintiff/Relator J. Bryan Quesenberry **("Relator")** is a resident of Oregon. He is an attorney licensed to practice law in Utah and Oregon and brings this action on behalf of the United States of America, the real party in interest.

15.  Defendant Washington Convention and Sports Authority **("Authority")**, also known as Events DC[1], is a government-owned entity in the District of Columbia **("District")**.

16.  The following establish the Authority as a government-owned entity:

    a.  The Authority was legislatively created by Congress in D.C. Official Code § 10-1202.02(a): "There is established, as an independent authority of the District government, the Washington Convention and Sports Authority. The Authority shall be a corporate body,[2] *created to effectuate certain public purposes*, that has a legal existence separate from the District government." (Emphasis added).

    b.  Just as Congress created the Authority, it abolished the Authority's predecessor entity, the District of Columbia Sports and Entertainment Commission. *Id.* at § 10-1202.02b(b).

    c.  Congress vested the Authority with the legal and equitable title to all real property, personal property, records, capital, and intangible assets of its predecessor entity. *Id.* at § 10-1202.02c(a)(1).

---

[1] *See*, https://cfo.dc.gov/publication/2023-es0-washington-convention-center-and-sports-authority

[2] The District, clearly a governmental entity, enjoys the same status as a corporate body as the Authority. *Id.* at § 1-102 ("The District is created a government by the name of the 'District of Columbia,' by which name it is constituted a body corporate . . .").

d.  Congress vested the Authority with the authority to enact rules and regulations for the administration and regulation of its business and affairs (*id.* at § 10-1202.03(3)) and the authority to issue revenue bonds. *Id.* at § 10-1202.03(9).

e.  Congress vested the Authority with the authority to "exercise any power ***usually possessed by public enterprises*** or private corporations performing similar functions …" *Id.* at § 10-1202.03(11) (emphasis added).

f.  Congress created a 12-member Board of Directors to govern the Authority, nine of whom are to be appointed by the Mayor of the District. *Id.* at § 10-1202.05(a)(1) and (2). The Mayor also appoints the chairperson of this board. *Id* at § 10-1202.05(e).

g.  Congress requires the Authority at the end of each fiscal year to transfer its excess cash (after payment of the Authority's liabilities and reserves) to the District's General Fund. *Id.* at § 10-1202.13(a).

h.  The Authority is subject to the District's public meetings law (Open Meetings Amendment Act of 2010).³ This public meetings law states: "All meetings … of any department, agency, board, or commission of the District government, including meetings of the Council of the District of Columbia, at which official action of any kind is taken shall be open to the public. No resolution, rule, act, regulation, or other official action shall be effective unless taken, made, or enacted at such meeting." *See*, District of Columbia Code § 1-207.42(a).

---

³ *See*, District of Columbia Self-Government and Governmental Reorganization Act of 1973, D.C. Official Code §1-207.42, and the District of Columbia Administrative Procedure Act of 1968, as amended by the Open Meetings Amendment Act of 2010, D.C. Official Code §2-576(5).

i. The mission of the Authority "is to generate economic and community benefits *for the residents and businesses of the District of Columbia…*" See, https://cfo.dc.gov/publication/2023-es0-washington-convention-center-and-sports-authority (emphasis added).

j. In the Authority's audited financial statements for 2020 and 2021 (posted on its website), its independent auditor describes the Authority as "a component unit of the Government of the District of Columbia." *See*, audit report, 1, https://eventsdc.com/sites/default/files/2022-02/WCSA%202021%20final%20audited%20financial%20statements.pdf. The audit also referenced the Authority's nearly $5 million PPP loan. *Id*. at 6, 8, 35. The auditor treated the Authority as a governmental entity by applying "Generally Accepted Accounting Principles (GAAP) *applied to governmental units…*" (*id*. at 6; emphasis added), and auditing "in accordance with auditing standards generally accepted in the United States of America and the standards applicable to financial audits contained in *Government* Auditing Standards issued by the Comptroller General of the United States." *Id*. at 45 (emphasis added).

k. The Authority owns and manages some of the most venerated and visited public venues across the nation's capital including:

- Walter E. Washington Convention Center
- Entertainment & Sports Arena
- DC Armory
- The Fields at RFK Campus
- Festival Grounds at RFK Campus

- Skate Park at RFK Campus
- Nationals Park
- Carnegie Library at Mt. Vernon Square
- Gateway DC
- R.I.S.E. Demonstration Center

1. The Authority explains on its website the public nature of its business – that it "is an economic force for the hospitality and tourism industry in the District, driving investment and growth, innovation and community benefits through hosting athletic, entertainment, cultural and corporate events at its properties. In fact, the Convention Center alone generates over $400 million in income annually for the city." https://eventsdc.com/about/governance

17. The Federal Deposit Insurance Corporation (FDIC) issued General Guidance on Practices for Marketing to a Government-Owned Entity (GOE) in which the FDIC described a GOE as including "traditional government agencies, departments, and public enterprises" as well as "government-owned and government-controlled entities." *See*, General Guidance, p. 8, https://www.fdic.gov/about/diversity/sbrp/410.pdf.

18. A government-owned entity is similar to a state-owned enterprise, which is characterized as:

   a. An entity formed by the government for the purpose of engaging in commercial activities;

   b. Fully or partially-owned by the government;

   c. Representing the government in commercial endeavors. *See*, https://www.investopedia.com/terms/s/soe.asp#:~:text=A%20state-owned%20enterprise

7

19. Despite being a governmental entity ineligible for PPP funds, the Authority applied and was approved for a first-draw PPP loan on May 25, 2021 (loan number 7370289010) in the amount of $5,250,685, received said PPP loan, and had said PPP loan forgiven on February 25, 2022.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. Although this issue is no longer jurisdictional after the 2009 amendments to the FCA, upon information and belief there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint, as those concepts are used in 31 U.S.C. § 3730(e), as amended by Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02.

21. Moreover, whether or not such a disclosure has occurred, Relator would qualify as an "original source" of the information on which the allegations or transactions in this Complaint are based. Relator researched and discovered the pertinent entity information and individual information of Defendant.

22. This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3732(a) because that section authorizes nationwide service of process and because Defendant is each a government entity located in the District of Columbia as alleged above.

23. Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(b)-(c) and 31 U.S.C. § 3732(a) because Defendant is a government entity located in the District of Columbia, and because violations of 31 U.S.C. §§ 3729 *et seq.* alleged herein occurred within this district.

## THE PAYCHECK PROTECTION PROGRAM

24.     Congress added sections 1102 and 1106 of the Coronavirus Aid, Relief, and Economic Security Act (**"CARES Act"**). Section 1102 contained a new program called the Paycheck Protection Program (**"PPP"**) and was part of the U.S. Small Business Administration's (**"SBA"**) 7(a) Loan Program. These two sections were intended to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic and the COVID-19 Emergency Declaration issued by President Trump on March 13, 2020.

25.     Due to the COVID-19 emergency, many small businesses nationwide were experiencing economic hardship as a direct result of the Federal, State, and local public health measures that were being taken to minimize the public's exposure to the coronavirus.

26.     The SBA received funding and authority through the CARES Act to modify existing loan programs and establish the new PPP loan program to assist small businesses nationwide adversely impacted by the coronavirus pandemic.

27.     Section 1102 of the Act temporarily permitted SBA to guarantee 100% of 7(a) loans under the PPP. Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

28.     The CARES Act was intended to provide relief to America's small businesses expeditiously.

29.     The CARES Act gave lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine eligibility of the borrower and use of loan proceeds, and to rely on specified documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness. Lenders were held harmless for borrowers' failures to comply with PPP rules.

30. Defendant submitted documentation attempting to establish eligibility such as payroll processor records, payroll tax filings, form 1099s, and income and expenses documentation.

31. In general, Defendant calculated an amount to borrow by aggregating payroll costs from the previous 12 months for employees whose principal place of residence was the United States. Annual employee salaries were capped at $100,000. Defendant then calculated the average monthly payroll cost and multiplied that amount by a factor of 2.5.

32. On the PPP application, a representative of Defendant had to certify in good faith to a number of representations to the Federal Government. The second bullet point under the CERTIFICATIONS AND AUTHORIZATIONS section on the PPP loan application states:

> ***The Applicant is eligible to receive a loan*** under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule). [Emphasis added].

33. Another certification on the application states, "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

34. Defendant also "further certif[ies] that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

35. Finally, Defendant certified that it "understand[s] that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

## ALLEGATIONS

36. Defendant is a governmental-owned entity created by the United States Congress that owns and operates various public venues located in the District.

37. Title I, Section 1102(a)(i)(D)(i) of the CARES Act indicates that borrowers must comply with certain eligibility requirements. The Code of Federal Regulations further adds that "government-owned entities" are ineligible to receive SBA loans, which would include PPP loans. *See*, 13 CFR 120.110(j).

38. As alleged above, the governmental nature of Defendant is evident by its (1) legislative creation by Congress, (2) appointment of nine of its board members by the Mayor of the District, (3) ability to obtain a bond, (4) obligation to pour excess cash over to the District's General Fund, (5) compliance with the District's public meetings and public records laws, (6) authority to manage and control several prominent public venues in the District, (7) delegated authority from Congress to enact its own rules and regulations, (8) mission to benefit the residents and businesses of the District, and (9) own admissions and acknowledgements of its public nature.

39. Upon information and belief, Defendant retained its PPP funds and has not repaid them.

40. Relator reserves the right to amend this Complaint and expand these allegations upon review of the actual applications and supporting documentation submitted by each Defendant.

### False Claims Act
### 31 U.S.C. § 3729(a)(1)(A)-(B)

41. Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

42. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, as amended.

43. By virtue of the acts described above, Defendant knowingly presented, or caused to be presented, false or fraudulent claims to the United States Government, or authorized agent of the United States Government, for payment or approval.

44. By virtue of the acts described above, Defendant knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

45. Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false claims were presented to third-party lending institutions. Relator does not have access to the records of all such false or fraudulent statements or claims.

46. Lenders, acting on behalf of the Federal Government, were guaranteed 100% of the PPP loans from the Federal Government. Said lenders were unaware of the falsity of the records, statements, and claims made or caused to be made by Defendant. Said lenders paid the claims that would not be paid but for Defendant's illegal conduct.

47. By reason of Defendant's acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

48. Additionally, the United States is entitled to a maximum penalty for each and every violation arising from Defendant's unlawful conduct alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, *qui tam* Plaintiff/Relator prays for judgment against Defendant as follows:

1. That this Court enter judgment against Defendant in an amount equal to three times the damages the United Sates has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729;

2. That Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

3. That Relator be awarded all costs of this action, including attorney's fees and expenses; and

4. That Relator recover such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.


Dated: 11/11/2023.                     Respectfully submitted,

                                       _____
                                       J. Bryan Quesenberry
                                       Plaintiff/Relator